805 So.2d 124 (2001)
STATE of Louisiana
v.
Rodrigo LOPES.
No. 2001-KK-1383.
Supreme Court of Louisiana.
December 7, 2001.
Ronald J. Rakosky, New Orleans, Maurice A. Brengardt, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Valentin M. Solino, Lionel Burns, Assistant District Attorneys, Counsel for Respondent.
*125 KNOLL, Justice.[*]
We granted defendant's writ to consider whether a criminal defendant whose primary language is not English and who apparently cannot understand English has a right to a court appointed translator for trial court proceedings.

FACTS AND PROCEDURAL HISTORY
On September 2, 2000, the defendant, Rodrigo Lopes, a citizen of Brazil whose native language is Portuguese, was arrested for having allegedly committed forcible rape in a dormitory on the campus of the University of New Orleans. Defendant was released after posting a $100,000 commercial bond.[1] Subsequently, the State formally charged the defendant with forcible rape. Defendant, accompanied by retained counsel and co-counsel, appeared at the preliminary examination. Lead counsel for defendant and the trial judge agreed that co-counsel, who was fluent in Spanish, would translate the hearing into Spanish. Although Spanish was not the defendant's primary language, lead counsel indicated to the trial court that defendant had sufficient fluency in Spanish to at least be apprized of the gist of the hearing. At the conclusion of the hearing, the trial court found that the State demonstrated that probable cause existed to charge the defendant with forcible rape and set the case for arraignment.
At the defendant's arraignment, defense counsel asked if the trial court had appointed a Portuguese interpreter, suggesting that the court had earlier agreed to do so. Thereafter, the arraignment date was upset and re-scheduled for a later date. At the re-scheduled hearing, the trial judge advised that the defendant had the obligation to obtain translation services, because defendant had secured his release with a $100,000 bond, had retained counsel, and apparently was not indigent. Defendant's arraignment was again postponed.
Prior to the arraignment date, defense counsel filed a written motion in which he averred that the defendant could not understand the proceedings against him without a translator and requested the trial court to provide a translator qualified to translate all trial court proceedings in Portuguese. Defense counsel asserted that without a translator, the defendant would be unable to assist in his defense. Analogizing LA.REV.STAT. ANN. § 15:270, which requires a court-appointed interpreter for deaf or severely hearing-impaired defendants, to the issue presented, defense counsel argued that no legal differentiation could be made between defendants who cannot understand court proceedings because of hearing impairments and defendants who cannot understand court proceedings because they do not understand English.
At the re-scheduled arraignment hearing, the trial court denied the defendant's motion and rejected the analogy to LA.REV. STAT. ANN. § 15:270. Assuming that the defendant was not indigent, the trial court cited the facts of defendant securing a sizeable bond and retaining private counsel. Defendant then waived the reading of the bill of information and entered a plea of not guilty.
Still seeking to have a court-appointed translator for all trial court proceedings, defense counsel applied for supervisory *126 writs to the Court of Appeal, Fourth Circuit, which denied the writ. State v. Rodrigo Lopes, 01-0795 (La.App. 4 Cir. 5/10/01). Finding that the issue defendant raised concerns serious questions of defendant's right to a fair trial, we granted defendant's writ. State v. Lopes, 01-1383 (La.6/29/01), 794 So.2d 805.

DISCUSSION
The State does not dispute the nearly self-evident proposition that a defendant who cannot speak or understand English would have a right to have his criminal trial translated to permit him to effectively participate in his own defense.[2] Our review of Louisiana's Constitution confirms that proposition.
LA. CONST. ART. 1, § 16 provides that the defendant has a right to a fair trial. This constitutional article is the source of specifics rights due a defendant in a criminal trial: such as the right to an "impartial trial," "to confront and cross-examine the witnesses against him," "to present a defense," and "to testify in his own behalf." Id. Utilizing this constitutional source provision, it is evident that the defendant's constitutional right to confront and cross-examine witnesses would be significantly impaired if he is unable to understand what these accusers say. See Valladares v. United States, 871 F.2d 1564, 1566 (11th Cir.1989); United States v. Carrion, 488 F.2d 12, 14 (1st Cir.1973), cert. denied, 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974); United States ex rel. Negron v. New York, 434 F.2d 386, 389 (2nd Cir. 1970); Terry v. State, 21 Ala.App. 100, 105 So. 386, 387 (1925). Likewise, a defendant who may choose to exercise his constitutional right to testify in his own behalf may be meaningless if a language barrier causes him to be misunderstood or he misconstrues questions posed to him because he simply does not understand the language. See Carrion, 488 F.2d at 14.[3]
Nevertheless, the State contests that the defendant's right to a translator must be *127 at the expense of the State when it appears that the defendant is not indigent. We note that at no point in the case before us did the defendant assert that he was indigent. Rather, in the trial court's denial of defendant's motion to have an interpreter appointed, it relied upon indicia that defendant was not indigent, i.e., privately retained counsel and defendant's ability to secure a commercial bond.[4] The narrow questions thus before us are whether defendant's indigency is a sine qua non for the appointment of a court interpreter and, if that question is answered negatively, who shall ultimately be responsible for the cost of the interpreter if the defendant is found guilty.
From the outset, we note that a defendant's financial status does not always determine his right to the court appointment of experts at the expense of the public fisc. This Court has long recognized that a person who lacks the mental capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in the preparation of his defense may not be subject to trial. State v. Nomey, 613 So.2d 157, 161 (La.1993). Accordingly, LA.CODE CRIM. PROC. ANN. art. 643 provides for the mental examination of the defendant, without regard to the defendant's financial status,[5] when the trial court has "reasonable ground to doubt the defendant's mental capacity to proceed." Id. As provided in LA.CODE CRIM. PROC. ANN. art. 659, the fees for this examination "shall be paid by the parish where the prosecution was instituted." Id. This proviso is premised on the proposition that our statutory scheme for the detection of mental incapacity "jealously guards a defendant's right to a fair trial." State v. Rogers, 419 So.2d 840, 843 (La.1982).
Similarly, LA.REV.STAT. ANN. § 15:270 provides that "[i]n all criminal prosecutions, where the accused is deaf or severely hearing-impaired, he shall have the proceedings of the trial interpreted to him in a language that he can understand by a qualified interpreter appointed by the court."[6] There is no requirement in the statute that limits the availability of hearing-impaired interpreters to the indigent. Commenting on LA.REV.STAT. ANN. § 15:270, the Court of Appeal, Fourth Circuit, stated:
[This provision] recognize[s] that the Constitution requires that a defendant sufficiently understand the proceedings against him to be able to assist in his own defense. Clearly, a defendant who has a severe hearing impairment, without an interpreter, cannot understand the testimony of witnesses against him *128 so as to be able to assist in his own defense. Ferrell v. Estelle, 568 F.2d 1128 (5th Cir.1978).
State v. Barber, 617 So.2d 974, 976 (La. App. 4 Cir.1993).
There are common threads which run through this state's mental competency and severely hearing-impaired provisions: a need for the defendant to understand the charges leveled against him and the criminal proceedings in which he is involved, the importance of a defendant's ability to communicate with counsel, the ability of a defendant to effectively confront and cross-examine witnesses, and the defendant's understanding needed to exercise his constitutional right to testify in his own behalf in a meaningful manner. These same barriers confront a non-English speaking defendant who faces criminal charges against him, and call for like treatment. Accordingly, we find that defendant's need for a foreign (non-English) language translator should not be conditioned upon a defendant's financial status.[7] Therefore, we find that the trial court erred when it denied defendant's motion for the appointment of a translator on the ground that defendant was not indigent.
Because of the procedural posture of this case, the trial court has not yet determined that the defendant cannot adequately understand the English language. Without such a hearing, it has not been shown that the defendant can invoke the right to a court-appointed interpreter.[8] As recently stated in State v. Mondragon, 35,178 (La.App. 2 Cir. 4/19/01), 804 So.2d 657, "[t]he appointment of a qualified language interpreter based on an adequate showing of a defendant's inability to understand the proceedings in English is within the [trial] court's discretion." See also United States v. Sanchez, 928 F.2d 1450 (6th Cir.1991); United States v. Bennett, 848 F.2d 1134 (11th Cir.1988); United States v. Lim, 794 F.2d 469 (9th Cir. 1986) (holding that the appropriate use of interpreters in the courtroom is a matter within the sound discretion of the trial court). Therefore, we will remand this case to the district court to conduct a hearing on the defendant's motion to have an interpreter appointed for all trial proceedings against him.
Finally, we find it also appropriate to comment on the defendant's ultimate exposure to the costs of the court-appointed *129 interpreter. LA.CODE CRIM. PROC. ANN. art. 887 provides, in pertinent part:
A defendant who is convicted of an offense ... shall be liable for all costs of the prosecution or proceeding, whether or not costs are assessed by the court, and such costs are recoverable by the party or parties who incurred the expense.
This provision continues the well-settled declaration that the defendant's liability for costs of his criminal prosecution and the proceedings related thereto is inherent in the adjudication of his guilt. See Parker v. Robertson, 14 La. Ann. 249 (1859). As such, should the defendant be convicted, the costs for any necessary foreign language interpreter is assessable to him as a cost "of the prosecution or proceeding" against him.[9]

DECREE
For the foregoing reasons, the judgment of the district court which denied the defendant's motion for the appointment of an interpreter is reversed and set aside. This matter is remanded to the district court for the purpose of holding a hearing on the defendant's motion in accordance with the views expressed in this opinion.
REVERSED AND REMANDED TO THE DISTRICT COURT.
VICTORY, J., dissenting.[**]
The issue in this case is not whether the defendant has the right to a court appointed translator. The issue is whether the defendant, who is clearly not indigent, has a right to require the State of Louisiana to pay for the services of his translator. I know of no authority to suggest that a non-indigent defendant has a federal or state constitutional right to have this state's taxpayers bear the burden of paying for a translator. Nor is there any state statute dictating that such an obligation be satisfied out of the public fisc. That being the case, the trial judge and the court of appeal correctly rejected defendant's attempts to require the state to pay for such services. Every right does not carry with it a corresponding right to have the state pay for the expense of securing that right. For example, a non-indigent defendant has a right to counsel. But he does not have a right to require the state to pay his attorneys' fees and expenses.
I am not persuaded that legislation pertaining to the rights of deaf defendants has any bearing whatsoever on this case. La. R.S. 15:270 provides that all severely hearing-impaired persons have a right to a court appointed interpreter. That interpreter must take an oath that he will fairly and impartially interpret the proceedings to the deaf person and accurately report the deaf person's answers to questions to counsel and the court or jury. The statute speaks to the defendant's right to have an interpreter and dictates safeguards to insure the integrity of the judicial proceeding. It stipulates that the court will fix the fees and expenses to be received by the interpreter. However, nowhere in the statute is there a directive that such fees *130 will be paid by the state. The fact that the court fixes the fees of a court appointed expert does not carry with it the necessary implication that the state will pay those fees, particularly in the case of a non-indigent defendant.
Furthermore, even if La. R.S. 15:270 were read to require the state to pay the interpreters' fees for non-indigent deaf persons, that statute still does not govern the case before us. The judiciary is not empowered to expand monetary benefits that the legislature has provided specifically for its deaf citizens to different groups of litigants with different problems. The legislature well knows how to provide benefits where it deems it advisable to do so. Such matters fall exclusively to the legislative branch of the government, which is charged with the responsibility to appropriate funds and determine the expenditure of taxpayer dollars.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] The record shows that the $100,000 bond cost $12,000 to secure. Defense counsel asserted in his writ application that friends of the defendant, and not the defendant himself, paid for the bond.
[2] Although we have not addressed this issue before, it does not present a novel question of law. The United States Supreme Court has made no pronouncement on the matter, but numerous lower federal courts have found a right under the federal Constitution for a defendant who cannot sufficiently understand English to be provided a court-appointed translator. While the right deriving from the United States Constitution has had explicit guidelines since the 1978 enactment of 28 U.S.C. § 1827-28 (providing for the appointment of a certified or otherwise qualified interpreter to assist a defendant or witness who "speaks only or primarily a language other than the English language; or suffers from a hearing impairment (whether or not suffering also from a speech impairment")), in varying circumstances courts prior to that enactment found a right to an appointed translator. See, e.g. United States ex rel. Negron v. New York, 434 F.2d 386 (2d Cir.1970) (citing "[c]onsiderations of fairness, the integrity of the fact-finding process, and the potency of our adversary system of justice. ..." Id. at 389); United States v. Carrion, 488 F.2d 12, 14 (1st Cir. 1973), cert. denied, 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974) ("The right to an interpreter rests most fundamentally, however, on the notion that no defendant should face the Kafkaesque spectre of an incomprehensible ritual which may terminate in punishment.").
[3] AMERICAN BAR ASSOCIATION, STANDARD FOR CRIMINAL JUSTICE, No. 6-1.1(b) provides: "The trial judge should conduct the proceedings in clear and easily understandable language, using interpreters when necessary." The commentary to this proviso further states, "It is essential that the defendant have the opportunity to understand the nature of the proceedings. Formalistic pronouncements whose meanings are obscure either because of the voice in which they are recited or because of the technical language in which they are phrased cannot be accepted as fairly informing the defendant [of] what is transpiring. Particularly objectionable is the failure to provide a translator when a defendant's inadequate grasp of English prevents the defendant from comprehending the courtroom process."
[4] The trial colloquy indicates that if the defendant were indigent, the trial court "would have no problems ... appointing an interpreter for him."
[5] Highlighting the availability of a sanity commission even to the non-indigent is State v. McManus, 187 La. 9, 174 So. 91 (1937). In that case, this Court commented that although the parish was responsible for the fees of the sanity commission that the trial court appointed, the parish was not responsible for the fees of the medical experts that the defendant summoned as additional experts.
[6] We note, too, that when a person with hearing loss is a juror or prospective juror, LA. CODE CRIM. PROC. ANN. art. 401.1 requires that an "interpreter shall be sworn in as an officer of the court." As provided in LA.CODE CRIM. PROC. ANN. art. 401.1(D), "[a]ll costs relating to the interpreting services ... shall be paid by the clerk of court's office through the juror and witness fee account." An interpreter is also provided for grand jury sessions when a witness cannot speak English. As provided in LA.CODE CRIM. PROC. ANN. art. 433(A)(1)(e), an interpreter who has been sworn to translate the testimony of a non-English speaking witness may be present at the sessions of the grand jury.
[7] Our resolution of this issue conforms with 28 U.S.C. § 1827-28, the federal statute that authorizes federal district court judges to appoint a certified or otherwise qualified interpreter to assist a defendant or witness who "speaks only or primarily a language other than the English language; or suffers from a hearing impairment (whether or not suffering also from a speech impairment)." 28 U.S.C. § 1827(d)(1)(A), (B). As stated in United States v. Johnson, 248 F.3d 655 (7th Cir. 2001), citing United States v. Febus, 218 F.3d 784, 791 (7th Cir.2000), "[o]ne of the purposes of the [Court Interpreters Act] is `to ensure that the defendant can comprehend the proceedings and communicate effectively with counsel' through the appointment of an interpreter." Id. Significantly, "[i]nterpreter appointments [under 28 U.S.C. § 1827] are to be made without regard to the defendant's financial status, the costs to be borne by the federal courts." LESLIE V. DERY, AMADOU DIALLO AND THE "FOREIGNER" MEME INTERPRETING THE APPLICATION OF THE FEDERAL COURT INTERPRETER LAWS, 53 Fla. L.Rev. 239, 261 (2001).
[8] Because we have no jurisprudence on this issue, we find it appropriate to reference other jurisdictions to show some of the considerations that they have taken into account at such hearings: the extent of defendant's education in the United States; the duration and extent of the defendant's presence in an English-speaking community; and the extent to which the defendant was able to communicate with police after arrest. See, e.g. People v. Lopez, 114 Ill.App.3d 1018, 70 Ill.Dec. 580, 449 N.E.2d 927, 934 (1983); Gonzalez v. Virgin Islands, 109 F.2d 215, 217 (3rd Cir.1940).
[9] We note that the policy of taxing a convicted defendant with the costs of translation is observed in other jurisdictions. See, e.g. ARK. CODE ANN. § 16-89-104 (Michie 2001) ("[T]he fee for the services of the interpreter ... shall be paid in the manner as the court may determine, except that an acquitted defendant shall not be required to pay any fee for the services of a court-appointed interpreter."); OHIO REV. CODE ANN. § 2335.09 (West 2001) ("Whenever, in any criminal proceeding ... and interpreter is necessary ... [s]uch fees shall be taxed...."); UTAH CODE ANN. § 787-24-4 (2001) ("[T]he court may assess all or part of the fees and costs of the interpreter against the person for whom the service is provided.").
[**] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.